1  NEAL S. SALISIAN, SBN 240277
   neal.salisian@salisianlee.com
2  JARED T. DENSEN, SBN 325164
   jared.densen@salisianlee.com
3  BRIAN C. ZHANG, SBN 342032
   brian.zhang@salisianlee.com
4  **SALISIAN | LEE LLP**
   550 South Hope Street, Suite 750
5  Los Angeles, California 90071-2924
   Telephone:  (213) 622-9100
6  Facsimile:  (800) 622-9145

7  MARISA D. POULOS (SBN 197904)
   marisa.poulos@balboacapital.com
8  **BALBOA CAPITAL CORPORATION**
   575 Anton Boulevard, 12th Floor
9  Costa Mesa, California 92626
   Tel: (949) 399-6303

10
   Attorneys for Plaintiff
11 AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

12

13

14              THE UNITED STATES DISTRICT COURT

15            FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION, | Case No. 8:24-cv-00868-FWS-JPR |
| | [Assigned to the Hon. Fred W. Slaughter] |
| 19                    Plaintiff, | **BALBOA CAPITAL CORPORATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT KATIA SOLER** |
| 20           vs. | |
| 21  KATIA SOLER, an individual, | Complaint Filed:     April 19, 2024 |
| 22 | Trial Date:          None |
| 23                    Defendant. | |

24

25

26

27

28

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 12, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the Ronald Reagan Federal Building and U.S. Courthouse, located at 411 W. 4th Street, Santa Ana, California 92701, the Honorable Fred W. Slaughter presiding, plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against Defendant Katia Soler, an individual ("Soler" or "Defendant"), for a judgment amount of **$234,392.95**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $234,392.95, as Balboa has established (a) a sum certain due and owing by Defendant Soler to Balboa pursuant to the Equipment Financing Agreement and Personal Guaranty entered into by Soler and Balboa; (b) that Defendant Soler is not in military service and is neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//
//

1

1    PLEASE TAKE FURTHER NOTICE that this motion is based on this

2    Notice of Motion, the supporting Memorandum of Points and Authorities, the

3    supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached

4    thereto, the pleadings and papers filed in this action, and upon such further briefing,

5    authorities, and argument submitted to the Court prior to, or during, the hearing on

6    this matter.

7

8    DATED:  August 15, 2024            SALISIAN | LEE LLP

9

10                                      By: _____

11                                           Jared T. Densen
                                             Neal S. Salisian
12                                           Brian C. Zhang

13                                      Attorneys for Plaintiff
14                                      AMERIS BANK d/b/a BALBOA CAPITAL
                                        CORPORATION
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2   I.    INTRODUCTION AND RELEVANT FACTS....................................................1

3        a.    The Equipment Financing Agreement ………………..………………1

4        b.    Attorneys' Fees and Costs …………………………………………….2

5        c.    Motion for Default Judgment …………………………………………2

6   II.   LEGAL ARGUMENT .......................................................................................3

7        A.    Plaintiff Will Be Highly Prejudiced If Its Motion for

8              Default Judgment Is Denied..................................................................4

9        B.    Plaintiff Has A High Likelihood Of Success On The

10             Merits Of Its Substantive Claims And Its Complaint Is

11             Sufficiently Pled. .................................................................................5

12       C.    The Sum Of Money At Stake Favors An Entry Of A

13             Default Judgment. ...............................................................................7

14       D.    There Are No Material Facts That Are Reasonably In Dispute.............8

15       E.    Defendant's Default Is Not The Result Of Excusable Neglect............10

16       F.    Policy Concerns Favor Default Judgment In This Matter. ..................11

17       G.    Plaintiff Has Proven Its Damages. .......................................................12

18  III.  CONCLUSION ................................................................................................13

19

20

21

22

23

24

25

26

27

28

1

1

## <u>TABLE OF AUTHORITIES</u>

2    <u>C</u>ASES

3    *Acoustics, Inc. v. Trepte Constr. Co.,*

4          14 Cal. App. 3d 887, 916 (1971)..........................................................................6

5    *Draper v. Coombs*,

6          792 F.2d 915, 924 (9th Cir. 1986).....................................................................10

7    *Educational Serv., Inc. v. Florida State Board for Higher Education*,

8          710 F.2d 170, 176 (4th Cir. 1983).....................................................................10

9    *Eitel v. McCool*,

10          782 F.2d 1470, 1471-72 (9th Cir. 1986)....................................3, 4, 5, 7, 8, 10

11    *Geddes v. United Fin. Group*,

12          559 F.2d 557, 560 (9th Cir. 1977)....................................................................5, 9

13    *Landstar Ranger, Inc. v. Parth Enters, Inc.*,

14          725 F.Supp.2d 916, 921 (C.D. Cal. 2010).........................................................9

15    *McKnight v. Webster*,

16          499 F.Supp.420, 424 (E.D. PA 1980) ...............................................................10

17     *NewGen, LLC v. Safe Cig, LLC,*

18          804 F.3d 606, 616 (9th Cir. 2016) ………….……….……………..…….10, 11

19    *O'Connor v. State of Nevada*,

20          27 F.3d 357, 364 (9th Cir. 1994).......................................................................10

21    *Pena v. Seguros La Comercia, S.A.*,

22          770 F.2d 811, 814 (9th Cir. 1985).....................................................................11

23    *Penpower Tech, Ltd. v. S.P.C. Tech.*,

24          627 F.Supp.2d 1083 (N.D. Cal. 2008)............................................................8, 11

25    *PepsiCo, Inc. v. Cal. Sec. Cans*,

26          238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)....................................................4, 5

27    *Reichert v. Gen. Ins. Co.,*

28          68 Cal. 2d 822, 830 (1968)..................................................................................6

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00868-FWS-JPR

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,

    194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) .......................................................... 10

*Walters v. Statewide Concrete Barrier, Inc.*,

    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ......... 7

STATUTES

Civ. Code §§ 1620, 3300 .............................................................................................. 6

Fed. R. Civ. P. 55 .......................................................................................................... 3

RESTATEMENT 2d. CONTRACTS § 235(2) .......................................................... 6

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00868-FWS-JPR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against Defendant Katia Soler III, an individual ("Soler" or "Defendant")[1].

### a.  The Equipment Financing Agreement.

This action involves a claim for damages by Balboa against defendant Soler for breach of the Equipment Financing Agreement No. 313926-003 (the "EFA"), and corresponding personal guaranty.  [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and JKJC and Soler, on the other, entered into the EFA on or about July 28, 2022.  [*See id*.]  Under the terms of the EFA, Balboa loaned to JKJC the sum of $220,306.14, in order to finance equipment for its business (the "Collateral").  [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with JKJC, Soler personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA (the "Guaranty").  [*See id*., ¶4.]  Balboa relied on such Guaranty to finance the Collateral for JKJC's business.  [*See id*., Exh. B.]

Under the EFA, JKJC was required to make seventy-two (72) monthly payments of $3,789.00, beginning on September 27, 2022.  [*See id*., ¶5.]  The last payment received by Balboa was credited toward the payment due for December 27, 2023.  [*See id*., Exh. C.]  Therefore, on or about January 27, 2024, JKJC breached the EFA, and Soler breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.

---

[1] As to the instant Motion, Balboa is only seeking default as to defendant Soler, as JKJC Enterprise Inc. ("JKJC") filed a Chapter 11 Bankruptcy prior to this action.

At the time of Defendant's default, in addition to late charges in the amount of $454.68, there remained fifty-six (56) monthly payments, for a total of **$212,638.68**, due to Balboa.  [*See id*., ¶6, Exh. C.]  Defendants have since failed to make any payments.  [*See id*.]

In addition, based on the amount due of $212,638.68, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from January 27, 2024 (the date of breach), to September 12, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$13,397.50**, accruing at a rate of **$58.25 per day**, until the entry of judgment.  [*See id*.; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

### b.  Attorneys' Fees and Costs.

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Ngo Decl., ¶3, Exh. A.]  Balboa has incurred **$504.00**, in recoverable costs.  [*See* Densen Decl., ¶7, Exh. E.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,852.77**.  [*See id*., ¶7.]

### c.  Motion for Default Judgment.

Balboa's Motion for Default Judgment satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on April 19, 2024.  [*See* Dkts. 1-4.]  Defendant Soler was properly served on July 5, 2024, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkt. 10.]  On August 7, 2024 Balboa filed its Request for Clerk to Enter Default against Defendant Soler ("Default Entry Request"), and the Clerk of the Court entered the default against Soler on August 9, 2024.  [*See* Dkts. 12-13.]

Defendant Soler is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the Servicemembers Relief Act of 1940 ("SCRA").  [*See* Densen Decl., ¶4, Exh. D.]

Moreover, this Court has subject matter jurisdiction over the instant action. The amount in controversy, as alleged in the Complaint and as set forth herein, exceeds $75,000. [*See* Dkt. 1; *see also* Densen Decl., ¶8.] Plaintiff Balboa was and still operates as a California corporation, with its principal place of business in Orange County, California. [*See* Dkt. 1, ¶1.] Balboa is also now a wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank. [*See id*.]

Based upon my office's research, and upon information and belief, defendant Soler is a citizen of the State of Florida, including the Driver's License Soler provided to Balboa which lists Soler's domicile as Kissimmee, FL 34746. [*See id*., ¶9.]

As set forth below, a default judgment should be entered against Defendant Soler since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendant Soler in the amount of **$234,392.95**.

## II.   LEGAL ARGUMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on April 19, 2024. [*See* Dkts. 1-4.] Defendant Soler was properly served on July 5, 2024, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkt. 10.] On August 7, 2024

Balboa filed its Default Entry Request, and the Clerk of the Court entered the default against Soler on August 9, 2024.  [*See* Dkts. 12-13.]

Defendant Soler is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA.  [*See* Densen Decl., ¶4, <u>Exh. D</u>.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment.  *See id.*

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

### A.    <u>Plaintiff Will Be Highly Prejudiced If Its Motion for Default Judgment Is Denied.</u>

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendant Soler's deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to the EFA, financed the Collateral for JKJC, with Defendant agreeing to make seventy-two (72) monthly payments of $3,789.00, for which fifty-six (56) monthly payments, in addition to late charges in

4

the amount of $454.68, for a total of **$212,638.68**, still remain due to Balboa.  [*See* Ngo Decl., ¶¶5-6, Exh. C.]

Balboa has made demands for its monies from Defendant under the Guaranty, all of which Defendant Soler has failed to pay back.  [*See id*., ¶8.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendant has been unwilling to participate in, or otherwise, acknowledge the litigation.  Balboa's Motion for Default Judgment is its final option for an attempt at recovery against Defendant Soler, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims against Defendant Soler.  *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant Soler will obtain a significant windfall of over $234,392.95.  Not only will the deliberate nonaction by Defendant Soler and her continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant Soler to be granted by this Court.

**B.**    **Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the Defendants, and (4) resulting damages proximately caused by the Defendants' breach of contract. *See Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met. Specifically, Balboa, on the one hand, and JKJC and Soler, on the other, entered into the EFA on or about July 28, 2022. [*See* Ngo Decl., ¶3, Exh. A.] Under the terms of the EFA, Balboa loaned to JKJC the sum of $220,306.14, in order to finance the Collateral for its business. [*See id.*]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with JKJC, Soler personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA via the Guaranty. [*See id.*, ¶4, Exh. B.] Balboa relied on such Guaranty to finance the Collateral for JKJC's business. [*See id.*]

Under the EFA, JKJC was required to make seventy-two (72) monthly payments of $3,789.00, beginning on September 27, 2022. [*See id.*, ¶5.] The last payment received by Balboa was credited toward the payment due for December 27, 2023. [*See id.*, Exh. C.] Therefore, on or about January 27, 2024, JKJC breached the EFA, and Soler breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendant's default. In addition to late charges in the amount of $454.68. there remained fifty-six (56) monthly payments, for a total of **$212,638.68**, due to Balboa. [*See id.*, ¶6, Exh. C.] Defendants have since failed to make any payments. [*See id.*]

In addition, based on the amount due of $212,638.68, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from

January 27, 2024 (the date of breach), to September 12, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$13,397.50**, accruing at a rate of **$58.25 per day**, until the entry of judgment.  [*See id*.; *see also* Densen Decl.), ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Ngo Decl., ¶3, Exh. A.]  Balboa has incurred **$504.00**, in recoverable costs.  [*See* Densen Decl., ¶7, Exh. E.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,852.77**.  [See *id*.]

There is no doubt, and it cannot be disputed that: (1) Balboa and JKJC entered into the EFA; (2) Soler personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA; (3) JKJC received the loan in order to finance the Collateral for its business; (4) JKJC and Soler ceased making payments pursuant to the EFA and Guaranty; and (5) Balboa suffered and continues to suffer damages due to JKJC and Soler's continued nonpayment.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

### C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by Defendants' conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the

sum of money at issue is reasonably proportionate to the harm caused by the Defendants' actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the EFA in the amount of **$212,638.68**; prejudgment interest in the amount of **$13,397.50** (from the date of breach through the date Balboa's Motion has been noticed to be heard), plus **$58.25 per day** until the entry of judgment; statutory attorneys' fees, as fixed by Local Rule 55-3, in the amount of **$7,852.77**; and costs in the amount of **$504.00**. [*See* Densen Decl., ¶¶5-7, <u>Exh. E</u>.] The damages sought are contractually-based and arise out of the clear terms and obligations of the EFA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*]

As such, the sum of money sought is reasonable and far from speculative. It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment. And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D. <u>There Are No Material Facts That Are Reasonably In Dispute.</u>

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

*See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the Defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.  Balboa, on the one hand, and JKJC and Soler, on the other, entered into the EFA on or about July 28, 2022.  [*See* Ngo Decl., ¶3, <u>Exh. A</u>.]  Under the terms of the EFA, Balboa loaned to JKJC the sum of $220,306.14, in order to finance the Collateral for its business.  [*See id*.]

Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with JKJC, Soler personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA via the Guaranty.  [*See id*., ¶4.]  Balboa relied on such Guaranty to finance the Collateral for JKJC's business.  [*See id*., <u>Exh. B</u>.]

Under the EFA, JKJC was required to make seventy-two (72) monthly payments of $3,789.00, beginning on September 27, 2022.  [*See id*., ¶5.]  The last payment received by Balboa was credited toward the payment due for December 27, 2023.  [*See id*., <u>Exh. C</u>.]  Therefore, on or about January 27, 2024, JKJC breached the EFA, and Soler breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendant's default, in addition to late charges in the amount of $454.68, there remained fifty-six (56) monthly payments, for a total of **$212,638.68**, due to Balboa.  [*See id*., ¶6, <u>Exh. C</u>.]  Defendants have since failed to make any payments.  [*See id*.]

Defendant Soler cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If

9

anything, defendant Soler's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.     Defendant's Default Is Not The Result Of Excusable Neglect.

Excusable neglect is not found where a Defendants who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that Defendants' counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted Defendants to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (Defendants' failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where Defendants filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where Defendants has good faith of a timely answer); *Educational Serv., Inc. v. Florida State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where Defendants had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where Defendants sought an extension of time to respond, but a default judgment was sought in the interim).

Where the Defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment.  *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant Soler failed to make any showing whatsoever that her unwillingness to participate in the litigation stemmed from, or was in any way due

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00868-FWS-JPR

to, excusable neglect.  Defendant Soler was properly served by personal service at 931 Bali Rd., Cocoa Beach, FL 32931.  [*See* Dkt. 10.]  Defendant has not yet made any appearance in the action, and thus, has not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a Defendants makes good faith showing that the Defendants attempts to participate in the litigation to address and defend the allegations set forth against the Defendants.  Declining to respond to a complaint after proper service (even in the case where Defendants' counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at 616.

Here, Defendant Soler has failed to acknowledge his wrongdoings and the allegations he faces, even in the slightest degree.  Instead, Defendant has blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather, Defendant Soler's course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

**F.    Policy Concerns Favor Default Judgment In This Matter.**

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*.  *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added).  The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment.  *See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (Defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment.  As detailed in II.E., *supra*, Defendant has made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action.  Defendant has deliberately

11

chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendant Soler's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendant for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

### G.  Plaintiff Has Proven Its Damages.

Under the EFA, JKJC was required to make seventy-two (72) monthly payments of $3,789.00, beginning on September 27, 2022. [*See id.*, ¶5.] The last payment received by Balboa was credited toward the payment due for December 27, 2023. [*See id.*, Exh. C.] Therefore, on or about January 27, 2024, JKJC breached the EFA, and Soler breached the Guaranty, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendant's default, in addition to late charges in the amount of $454.68, there remained fifty-six (56) monthly payments, for a total of **$212,638.68**, due to Balboa. [*See id.*, ¶6, Exh. C.] Defendants have since failed to make any payments. [*See id.*]

In addition, based on the amount due of $212,638.68, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from January 27, 2024 (the date of breach), to September 12, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$13,397.50**, accruing at a rate of **$58.25 per day**, until the entry of judgment. [*See id.*; *see also* Densen Decl., ¶¶5-6.]

Pursuant to Paragraph 20 of the EFA, Balboa is entitled to recover its attorneys' fees and costs from Defendants. [*See* Ngo Decl., ¶3, Exh. A.] Balboa

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00868-FWS-JPR

has incurred **$504.00**, in recoverable costs.  [*See* Densen Decl., ¶7, <u>Exh. E</u>.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,852.77**.  [See *id*.]

Altogether, this totals out to **$234,392.95** (as of September 12, 2024), calculated as follows:

| | | |
|---|---|---|
| - | Amount owed: | $212,638.68 |
| - | Prejudgment Interest: | $ 13,397.50 |
| - | Attorneys' Fees: | $   7,852.77 |
| - | Recoverable Costs: | $     504.00 |
| - | **Total** | **$234,392.95** |

## III.  <u>CONCLUSION</u>

Based on Balboa's Complaint, Motion for Default Judgment, and all supporting papers, Balboa respectfully requests that the Court grant its Motion for Default Judgment against Defendant Soler, in the total amount of **$234,392.95**.

DATED: August 15, 2024          SALISIAN | LEE LLP

By:  _____
          Jared T. Densen
          Neal S. Salisian
          Brian C. Zhang

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL
CORPORATION